| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | **NOT FOR PUBLICATION** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:  Chapter 7
SUPREMA SPECIALTIES, INC., *et al.*,  Case No.: 02-10823 (JMP)
  Jointly Administered

 Debtors,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
KENNETH SILVERMAN, CHAPTER 7
TRUSTEE OF THE ESTATES OF SUPREMA  Adv. Pro. No. 04-01078 (JMP)
SPECIALTIES, INC., *et al.*,

 Plaintiff,

-against-

HIDDEN VILLA RANCH,

 Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION
TO COMPEL PRODUCTION OF AUDIT COMMITTEE REPORT**


APPEARANCES:

SILVERMAN PERLSTEIN & ACAMPORA LLP
Attorneys for the Chapter 7 Trustee
100 Jericho Quadrangle
Jericho, New York 11753

    Ronald J. Friedman, Esq.
    Jay S. Hellman, Esq.

FARRELL FRITZ, P.C.
Attorneys for Hidden Villa Ranch
1320 Reckson Plaza
Uniondale, New York 11556

    Ted A. Berkowitz, Esq.
    Patrick T. Collins, Esq.

LAW OFFICES OF DONALD L. CORNWALL
Attorneys for Hidden Villa Ranch
1211 Wilshire Boulevard, Suite 1900
Los Angeles, California 90023

      Donald L. Cornwall, Esq.


JAMES M. PECK
United States Bankruptcy Judge

      Before the Court is the one remaining issue to be decided in connection with a motion to compel production of documents brought by defendant Hidden Villa Ranch ("Hidden Villa" or "Defendant") against the Chapter 7 Trustee of the Estate of Suprema Specialties, Inc., *et. al.*, (the "Trustee"). The parties have resolved, or the Court has already addressed, all discovery disputes raised in this discovery motion except for Defendant's request for production of a report and supporting work papers and interview notes that summarize the investigation into the business practices of Suprema Specialties, Inc., *et al.* ("Suprema" or "Debtor"), that was conducted by Debtor's audit committee (the "Audit Committee"). The Trustee claims that the Audit Committee's report and supporting papers (together, the "Audit Committee Report") are protected by the attorney-client privilege and the attorney work product doctrine and should not be produced to Hidden Villa. Hidden Villa argues that the Audit Committee Report should be produced on a number of alternative grounds: first, the report was produced for public consumption and thus is not privileged; second, even if the Audit Committee Report is privileged, Suprema's board of directors (the "Board") and/or the Trustee have waived that privilege; and third, even if there had been no waiver, the Audit Committee Report should be produced because Hidden Villa has a substantial need for it.

2

For the reasons discussed below, the Court denies the motion to compel because the documents at issue are protected from disclosure by both the attorney-client privilege and work product doctrine, neither privilege has been waived and Hidden Villa has not shown substantial need.

## Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. §§1334 and 157 and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(H).

## Factual Background

The Audit Committee Report was written in response to suspected accounting irregularities and wrongdoing by senior management of Suprema. On December 21, 2001, following the resignation of Suprema's Chief Financial Officer and Controller, the Board issued a press release announcing that it would conduct an investigation into the company's business practices. A few days later, on December 24, 2001, NASDAQ, the exchange on which Suprema's shares werebeing traded, stated that it would halt trading in Suprema stock until it was satisfied that the company's financial statements were accurate and the company was in compliance with listing criteria.

The Board initially conducted the investigation along with Suprema's then-outside auditor BDO Seidman, but turned the investigation over to the Audit Committee on January 4, 2002, two weeks after issuance of the press release. On January 7, 2002,

3

the Audit Committee retained its own counsel, Clifford Thau, Esq. of Squadron Ellenoff Plesent & Sheinfeld LLC, to assist in conducting the investigation.[1]

On January 11, 2002, the Securities & Exchange Commission ("SEC") issued a subpoena to Suprema for documents including "[a]ll documents concerning the facts and circumstances described in Suprema's press release of December 21, 2001." On January 25, 2002, Blank Rome LLP, outside counsel for Suprema, sent roughly 10,000 pages of documents to the SEC in response to that subpoena. Among those documents were 1,004 pages pertaining to the Audit Committee investigation and 80 pages of documents concerning the December 21, 2001 press release. Certain documents were withheld from production on the basis of the attorney-client privilege and the assertion that various documents constituted attorney work product.

Also on January 25, 2002, Mr. Thau retained Deloitte & Touche LLP to serve as an independent auditor on the Audit Committee's investigation. Shortly thereafter, on January 28, 2002, federal and New Jersey agents entered Suprema's facilities in Patterson, New Jersey, seized most of Suprema's records and questioned Suprema's employees. The following month, Suprema commenced a chapter 11 case.

Suprema's chapter 11 case was converted to a case under chapter 7 on March 20, 2002, and thereafter the Trustee assumed responsibility for the investigation. The Trustee retained Mr. Thau as counsel to continue the work he had started for the Audit Committee. A written report of the Audit Committee's investigation (either a "draft," as stated by the Trustee, or the "final" version, as Defendant asserts) was delivered to the Trustee on June 18, 2002.

---

[1] Mr. Thau joined Vinson & Elkins LLP on February 1, 2002, and he continued to serve as counsel to the Audit Committee at his new firm.

4

The Trustee maintains that no privileged documents regarding the Audit Committee investigation have been shared with the SEC, the United States Attorney's office, or any other outside organization and that there has been no waiver of the attorney-client privilege or the protection of the work product doctrine with respect to the Audit Committee Report.

## Procedural History

The Trustee filed his complaint against Defendant on January 19, 2004, alleging that Defendant unwittingly participated in a fraudulent scheme perpetrated by Suprema and received fraudulent conveyances from November 1999 to June 2001. In October 2004 and January 2005, the parties exchanged discovery requests and some discovery was conducted.

The Trustee and Hidden Villa have a history of disagreements relating to discovery. In February 2005, the parties participated in a discovery conference initiated by Hidden Villa before Judge Blackshear that resulted in an order directing counsel for the Trustee to produce an inventory log of documents so that Hidden Villa could select those documents it wanted to inspect. On December 19, 2005, Hidden Villa again requested judicial intervention relating to a number discovery issues while this case was assigned to Judge Drain and requested a discovery conference and permission to file a motion to compel. In February 2006, after reassignment of the case, this Court conducted an informal discovery conference pursuant to Local Bankruptcy Rule 7007-1(b) relating to multiple discovery demands of the Defendant. This local rule requires the parties to any discovery dispute to confer with the Court prior to filing any motion relating to discovery, encourages informal resolution of such disputes and discourages unnecessary motion practice.

5

The discovery conference at first seemed to have promoted increased cooperation between the parties but that turned out to be a mistaken impression. Five months later, on July 28, 2006, without requesting a further discovery conference, Defendant filed its 57-page motion to compel discovery and to award sanctions against the Trustee, along with lengthy supporting affirmations and exhibits. The motion, as the Court construed it, appeared to be overly adversarial in tone, addressed issues that were beyond the scope of the original informal discovery conference held in February and suggested to the Court that the discovery issues had been blown out of proportion to their real significance in the litigation. This assessment, together with the concern that discovery was being used for tactical purposes and as a means to avoid dealing with the merits of the litigation, led the Court to order mediation at the conclusion of the September 27, 2006 hearing on the motion.[2] The parties selected a mediator, and mediation was conducted on December 5, 2006. Although the mediator was unable to bring about an agreement must to settle the litigation, the parties were able to resolve all outstanding discovery issues, except for the production of the Audit Committee Report.

A status conference was held on April 25, 2007, at which time the parties confirmed that production of the Audit Committee Report remained an open issue that needed to be resolved by the Court. Consequently, at this point the single discovery question before the Court is whether the Audit Committee Report must be produced to

---

[2] The parties met and conferred informally for several hours prior to the hearing and were able to resolve a number of the issues that had been briefed. The unresolved issues were production of the Audit Committee Report and the scheduling and duration of the Trustee's deposition. Defendant withdrew its request for sanctions against the Trustee before the hearing. The record of the hearing on September 27 reflects that a number of the issues were resolved from the bench, including the Defendant's request to take the deposition of the Trustee before conducting other depositions and Defendant's request for permission to extend the questioning of the Trustee for up to three days. The Court denied the Defendant's request for an order extending the maximum length of the Trustee's deposition to twenty-one hours finding that no cause had been shown for such an extension given the early stage of discovery and declined to require that the deposition of the Trustee should take place before taking depositions of fact witnesses. These bench rulings are set forth in the transcript of the hearing at pp. 90-93.

6

the Defendant or if it is protected by the attorney-client privilege or work product doctrine.

## Discussion

### Attorney Work Product Doctrine

In order for a document to be protected under the work product doctrine, the document must have been prepared "in anticipation of litigation." Fed. R. Civ. P. 26(b)(3).[3] The Court of Appeals for the Second Circuit has adopted the Wright and Miller definition of "anticipation of litigation," which states that a document is privileged if "in light of the nature of the document and the factual situation of the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 1134 F.3d 1194, 1202 (2d Cir. 1998) (quoting 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2024 at 343 (1994)) (emphasis added). The *Adlman* case explicitly rejected a line of cases that protected only documents created "primarily to assist in litigation" and adopted a broader standard that protects documents created "because of" litigation. *Adlman*, 1134 F.3d at 1198. This "because of" standard means that documents are protected even if they analyze only the likely impact of litigation in order to assist in business decisions. *Adlman*, 1134 F.3d at 1202. The standard also means that documents created in "the normal course of business" or documents that would have been created regardless of litigation are not protected. *Id.*

Parties can compel the production of documents constituting work product, however, if they can show that they have a "substantial need" for the documents. Fed. R.

---

[3] Federal law governs the work product protection in this case. *See Grinnell Corp. v. ITT Corp.*, 222 F.R.D. 74, 77 (S.D.N.Y. 2003) ("federal law governs the applicability of the work product doctrine in all actions in federal court").

7

Civ. P. 26(b)(3). Generally, a document must be "essential" to a party's case to fall under this exception to the work product doctrine. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *see also Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 457 (2d Cir. 1975). Cases in which a "substantial need" exists generally involve unavailable witnesses due to circumstances such as death, *In re Grand Jury Investigation (Sun Co.)*, 599 F.2d 1224, 1232 (3d Cir. 1979), faulty memory due to brain damage, *McDougall v. Dunn*, 468 F.2d 468, 474 (4th Cir. 1972), or being outside the court's reach, *Hamilton v. Canal Barge Co.*, 395 F. Supp. 975, 976-78 (E.D. La. 1974).

**Attorney-Client Privilege**

The attorney-client privilege exists to protect confidential communications between attorneys and their clients and to encourage full disclosure to attorneys. Although there is generally no accountant-client privilege, *see United States v. Arthur Young & Co.*, 465 U.S. 805, 817 (1984), the Court of Appeals for the Second Circuit has held that the privilege can extend to accountants when the accountant's role is to clarify communications between an attorney and a client. *See, e.g., United States v. Kovel*, 296 F.2d 918, 924 (2d Cir. 1961).[4] This role as a clarifying intermediary has been analogized to the role played by an interpreter. *Id. at 922*; *see also United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999). Accountant-client communications, however, that take place with an attorney present but that are not within the "interpreter" framework are not privileged. *Ackert*, 169 F.3d at 139.[5]

---

[4]  Although Defendant has argued that New Jersey law governs attorney-client privilege in this case, with respect to the law of evidentiary privileges, New York courts generally apply the law of the place where the evidence in question will be introduced at trial or the location of the discovery proceeding itself, here New York. *See G-I Holdings, Inc. v. Baron & Budd*, 2005 U.S. Dist. LEXIS 14128 at *7 (S.D.N.Y. July 19, 2005).

[5]  Defendant argued at the hearing on this motion held on September 27, 2006, without providing any support in its motion, reply, or subsequent letter dated October 6, 2006, that "you cannot render what would

8

**Audit Committee Report and Supporting Documents Are Not Discoverable**

Hidden Villa asserts that the Audit Committee Report is not privileged, arguing that it was produced to alleviate concerns of NASDAQ and the SEC in order to allow trading of Suprema's stock to resume. Hidden Villa contends that the investigation occurred in "the normal course of business," and, accordingly, the investigation's findings and work papers are not privileged. This argument is not persuasive.

The Audit Committee Report was prepared in order to uncover wrongdoing at Suprema and assess potential exposure to civil and criminal proceedings, and, as such, cannot be fairly characterized as having been part of the normal course of Suprema's business. The Court agrees with the Trustee that the Audit Committee Report is protected by the attorney-client privilege and appears to have been used to clarify and facilitate confidential communications between the Audit Committee and its counsel. *See Ackert*, 169 F.3d at 139. The Audit Committee Report is also protected by the attorney work product doctrine because it was prepared in anticipation of litigation that would foreseeably arise out of the alleged fraudulent activity of members of Suprema's management, particularly litigation involving the SEC. *See United States v. Adlman*, 1134 F.3d at 1202. The SEC's subpoena and the seizing of records demonstrated that there was a substantial risk of litigation and that Suprema had reason to expect future litigation.

---

otherwise be non-privileged accountant work product into privileged work product merely by saying the attorneys retained it and did the investigation." Sept. 27, 2006 Hr'g T. at 95-96. This statement deals with the formalities of the retention process, but otherwise ignores *Kovel* and subsequent cases that make quite clear that accountant work product can be privileged if the accountant's role was, as here, to clarify communications between the attorney and the client. The Court in this decision does not directly address the question of whether retention of an accountant by a lawyer, in contrast with retention by the client directly, should make any difference with respect to the protection to be afforded an accountant's work product. Nonetheless, the Court notes that Deloitte & Touche was retained by counsel for the Audit Committee on January 25, 2002, and such a retention may augment an argument based on *Kovel* that the accountant, having been retained by counsel has a role here that may be analogous to that of an interpreter.

Hidden Villa also argues that Suprema waived any right to privilege it may have had regarding the Audit Committee Report. In connection with this motion, Hidden Villa submitted to the Court a document appearing to be a copy of minutes of the Suprema Board, dated March 22, 2002 (the "Board Minutes"), which state that the Board waived all privilege with respect to the results of the Audit Committee investigation, provided the disclosure is limited to "governmental authorities, to the creditors committee…and to the Company's secured lenders." The document also provides that the Audit Committee is "to enter into confidentiality agreements" with those parties with whom it shares these documents.

The Trustee has maintained that he never waived any privilege and that the Board Minutes produced by Hidden Villa as evidence of waiver were not signed and have not been properly authenticated.[6] Hidden Villa's argument that the Board Minutes waived privilege fails because intent to waive privilege does not waive privilege absent actual disclosure. *In re Bronx Cty. Grand Jury Investigation*, 439 N.E.2d 378, 384 (N.Y. Sup. Ct. 1982) ("client's mere intent to disclose to third persons the substance of the discussion held with the attorney does not mitigate the privilege. There must be actual disclosure, otherwise the confidence arising from the attorney-client relationship has not been breached"); *see also In re Steinhardt Partners L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) (finding privilege is universally waived when party voluntarily produces documents to adversary). Moreover, even if the Board Minutes were to be viewed as a waiver of the attorney-client privilege, the work product protection belongs to the Audit Committee's counsel and cannot be waived by the client. *See Rhone-Poulenc Rorer Inc. et al. v. The*

---

[6] The Trustee does acknowledge, however, that the document may reflect what actually occurred. For purposes of this decision, the Court assumes that the Board Minutes are exactly what they purport to be and that they are authentic.

10

*Home Indem. Co.*, 32 F.3d 851, 866 (3d Cir. 1994) ("the protection stemming from the work product doctrine belongs to the professional, rather than the client").

To make its waiver argument, Hidden Villa relies primarily on two related cases: *In re the Leslie Fay Companies, Inc.*, 152 F.R.D. 42 (S.D.N.Y. 1993) (*Leslie Fay I*) and *In re the Leslie Fay Companies, Inc.*, 161 F.R.D. 275 (S.D.N.Y. 1995) (*Leslie Fay II*). In *Leslie Fay* I, the plaintiff was able to obtain an audit committee report (which the Court agreed would normally be protected by the work product doctrine) because the report had been voluntarily provided to the SEC and U.S. Attorney, thus waiving privilege. In *Leslie Fay II*, the Plaintiff was able to obtain the supporting work papers for that same report because "having already waived the attorney-client privileges to the facts and analysis disclosed in the [Audit Committee Report], the Audit Committee should not be allowed to withhold the documents on which it is based to [Plaintiff]'s prejudice." *Leslie Fay II*, 161 F.R.D. at 283.[7] The facts in this case are distinguishable from *Leslie Fay I* and *II*, because the Trustee has affirmed that neither the Audit Committee Report nor any other privileged documents were produced to any party, including the SEC and the U.S. Attorney. Taking that assertion at face value negates any claim of waiver of the privilege.

Additionally, in cases with similar facts to those presented here, courts in the Second Circuit have found that audit committee reports (and supporting work papers) are protected from disclosure. In one recent case in this district, *In re Cardinal Health Inc., Sec. Litig.*, 2007 U.S. Dist. Lexis 36000 (S.D.N.Y. Jan. 26, 2007), which was decided subsequent to the parties' briefing and argument, plaintiff shareholders were attempting

---

[7] The Court notes that both *Leslie Fay* cases relied upon by Hidden Villa were decided prior to *Adlman* and rely on the more restrictive "primarily to assist in litigation" standard.

11

to compel production of a report and work papers created by the company's audit committee. The company was being investigated by the SEC and the U.S. Attorney for allegedly improper accounting practices. The company's audit committee retained independent counsel to conduct an investigation into these accounting issues, and plaintiffs in the securities litigation attempted to compel production of the audit committee documents. The *Cardinal* court found that the documents constituted attorney work product because they fell under the *Adlman* "because of" litigation standard and were thus protected from disclosure. *Id.* at *16-25. *Cardinal* distinguished *Leslie Fay*, pointing out that unlike the situation in *Leslie Fay*, the audit committee investigation at issue began after the start of the SEC investigation. This sequence of events suggested that there was an increased likelihood of future litigation at the time of preparing the audit committee report. *Id.* at *14-15.

The Court in *Cardinal* also found that the work product protection was not waived when the audit committee's counsel shared the audit committee report and work papers with the SEC because it was working with the SEC to uncover wrongdoing and had obtained confidentiality agreements prior to disclosure. *Id.* at *29. Disclosure to the SEC did not waive the protection of the work product doctrine because the audit committee's counsel and the SEC shared a "common interest." *Id.* (*quoting Steinhardt*, 9 F.3d at 236 (declining "to adopt a *per se* rule that all voluntary disclosures to the government waive work product protection")).

Notwithstanding the waiver language in the Board Minutes, the Trustee has taken steps to preserve the attorney-client privilege and work product protection applicable to the Audit Committee Report and confirms that he has not given copies of the documents sought by Hidden Villa to any third party. The *Cardinal* reasoning reinforces the

12

conclusion that the documents at issue in this case should remain privileged because turning over the Audit Committee Report to the government does not automatically constitute waiver of either the attorney-client privilege or work product protection. *See id.* at *29.

Hidden Villa's alternative argument is that even if the Audit Committee Report is considered to be privileged and even if the privilege has not been waived, the Defendant has a "substantial need" for the documents and the Trustee should be compelled to produce them for that reason. Hidden Villa asserts that because the interviews used to produce the report took place over four years ago, the memories of the witnesses are unlikely to be as sharp now as they were at the time of the original interviews. Additionally, Hidden Villa claims that the costs of re-interviewing the subjects of the investigation would be prohibitive, and so Hidden Villa's only practical recourse is to review the Audit Committee Report. Hidden Villa alleges that it needs "to know what the Audit Committee learned" to defend itself against the Trustee's fraudulent conveyance allegations.

Hidden Villa never asserts, however, that the Audit Committee Report is "essential" to its case. *See Hickman v. Taylor*, 329 U.S. at 511 (finding a document must be essential to a party's case to fall under the substantial need exception to the work product protection from disclosure). To support its "substantial need" claim, Hidden Villa relies on *Granite Partners, L.P. v. Bear, Stearns & Co.*, 184 F.R.D. 49 (S.D.N.Y. 1999), in which the Court compelled production of an audit committee report's work papers because "depositions conducted four years later cannot reveal the same detail and may omit exculpatory evidence contained only in the Trustee's interview notes." *Granite Partners*, 184 F.R.D. at 56. In *Granite Partners*, however, the final audit committee

13

report of that investigation had already been produced and was being used by the Trustee in his prosecution of claims. *Id.* at 54-55. The Court found that the Trustee's use of the final report to prosecute claims constituted waiver of the privilege for the supporting work papers, and the finding of substantial need was simply an additional ground to compel production along with the waiver finding. *Id.* at 55-56. The work papers were needed to fill in some of the gaps of the final report and to help the defendants' experts deconstruct the methodology used by the Trustee's expert. *Id.* at 56. Here, the Trustee has not produced the Audit Committee Report to any party and is not using the report in prosecution of any claims against Hidden Villa. The circumstances here are distinguishable from those present in *Granite Partners*, and Hidden Villa has not shown that the Audit Committee Report is so essential to its defense that it satisfies the "substantial need" exception to privilege.[8]

## **Conclusion**

For the reasons set forth in this memorandum decision, Hidden Villa's motion to compel production of the Audit Committee Report (including any supporting work papers and interview notes) is denied.

IT IS SO ORDERED.

Dated: New York, New York
       July 2, 2007

                                           *s/ James M. Peck*
                                           Honorable James M. Peck
                                           United States Bankruptcy Judge

---

[8] At the status conference on April 25, 2007, the parties referred to a pending criminal case in the District of New Jersey relating to the prosecution of former Suprema officers who allegedly were among the main perpetrators of the massive fraud at the company. Those individuals were found guilty on all counts of their indictment and a motion for a new trial currently is pending with briefs due in August. It is unclear at this juncture whether these criminal defendants or others who testified against them may be witnesses in this case. However, the fact that this prosecution has taken place further weakens the "substantial need" argument of the Defendant. There appear to be a number of other ways to discover what occurred at Suprema. Hidden Villa should be able to obtain the publicly-available criminal trial transcript and should be able to obtain other discovery relating to the evidence offered during the criminal trial.